The next case for argument is 161755 Miresonne v. Google. Is it Mr. Jatanovic? Mr. Jatanovic. Jatanovic. So you would be the first one. All right. Because every day. Please proceed. Thank you. Mr. Jatanovic here on behalf of this court overturned the board's obviousness decision that Mr. Miresonne's, the relevant claims of Mr. Miresonne's pen are unpatentable in view of the Hill and Finseth reference. Specifically, the board's finding that there was no teaching away in the Finseth reference is not supported by substantial evidence. The foundation for the board's finding was that, and I quote, that Finseth had no suggestion that descriptive text should be replaced as well as Finseth does not suggest that descriptive text should be abandoned wholesale. So, if you look at the law of teaching away, it's whether a reference would lead a person involving a skill in the art to a path that's divergent from that path that was taken by the applicant. And with Finseth, and excuse me, I'd like to quote the Dupuy-Spine v. Medtronic, and that's 567 F3rd. I know. Can we just roll back a little bit? Sure, sure. And that's that, I mean, there's nothing in Finseth that says that text descriptors shouldn't be used with visual graphics. I mean, I don't think anybody's disputing that the emphasis there is on the utility and the importance of visual graphics, but it doesn't suggest, does it, or state that you won't use, you shouldn't use, there's some problem with using text descriptions in connection with visual graphics? It does state that there are issues with the descriptive text. It calls it cursory and cryptic. If you look at what Finseth taught as a whole, it taught that the descriptive text was unreliable, and it recognized that problem of the search results with the text, and it chose, Finseth chose to replace that text with the graphical summary information. Well, it says often search results are cursory or cryptic, right? And so then why wouldn't you just supplement the information as opposed to replacing it altogether? Why do you read Finseth as replacing the information as opposed to supplementing it? Well, when you read Finseth, you recognize that it's unreliable, that Finseth thought that the text was unreliable, and in every embodiment, Finseth shows that he replaced the text with the graphical summary information. If you look at figures 5, 7, and 8, you only see the hyperlinks, and you see the graphical summary information. There's no text summaries in any embodiment in Finseth. But if I said your presentation is cursory, wouldn't you then take the opportunity to give me more information? Isn't that what you would do? You wouldn't necessarily say, okay, well, forget everything I said before, Your Honor, right? I mean, because it doesn't say the information is misleading or wrong or inaccurate. Those sorts of things might lead an ordinary person to say, well, then that information shouldn't be included. But the fact that something is cursory seems to me, doesn't it, to quite strongly imply it needs to be supplemented and not necessarily that it needs to be replaced? And the bottom line is, even if I thought, well, maybe it means replaced, what's my standard of review here? Well, so with respect to that, like I said, in every embodiment, Finseth replaced the text. The issue with Finseth and reliability, the problem is, Finseth was a machine and didn't know what text was reliable or not. So rather than showing unreliable text… Does it say the text was unreliable or does it only criticize it as cursory, which doesn't imply unreliable, but only implies incomplete or not sufficient? It criticizes it as both cursory and cryptic. No, cursory, what it says is cursory, if not cryptic. But again, cryptic, do you think cryptic implies unreliable? Should I interpret that word as meaning unreliable? Sure, I think when you… You think the definition of cryptic is unreliable? It's… cryptic means it's difficult to understand. Not able to be discerned, difficult to discover or appreciate. So that doesn't mean unreliable, right? Unreliable implies wrong, but cryptic, again, it seems to me is just an extreme word for the same notion of cursory. I think in the context of search engines, cryptic is unreliable. Cryptic text summaries are unreliable. You think so, but again, this is substantial evidence and you're not evidence, number one. And number two, I'm reviewing a body that is an expert agency that already made a decision, aren't I? That's correct. But I think when you look at FinSEP as a whole, and even Hill also supports the fact that the text is gibberish. See, FinSEP recognized that the problem was that the text was cursory and cryptic and unreliable and chose to replace that text with the graphical summary information. But compare the facts of FinSEP, it's very similar to the Dupuis Spine, which I mentioned earlier. In Dupuis Spine, the prior reference there, Puno taught that there was rigid screws and rigid screws had unreliability inside of the human body, that they were susceptible to breaking and instead taught that you should use a compressible member. And similar to the case of FinSEP, where you have this descriptive text that's unreliable, you don't know what could be used. Dupuis Spine taught, let's get rid of the rigid screws, replace it with compressible members, and that was found to be teaching away. FinSEP taught that these descriptive texts are unreliable, we should replace it with the graphical summary information. Does it use the word replace? I mean, I thought there's something that says enhance, like it enhances a user's experience compared to conventional search results when you use the visual previews. But that also suggests that you're not completely wholesale discarding or disregarding or teaching away from using the text. It's just that you're trying to enhance the experience by the addition of something else, right? It's accurate, it doesn't say replace verbatim in the text of FinSEP, but if you look at what FinSEP is about and what it shows in every embodiment, even if you look at the title of FinSEP, it's called the Graphical Search Engine Visual Index. It's about graphics and visual, and then you have every embodiment of FinSEP, discarding the text and replacing it with the graphical summary information. Similar to the Pew Spine where they got rid of the frigid member, in place of the compressible member, FinSEP got rid of the descriptive text in place of the graphical summary information. One thing I'd like to point out is that FinSEP recognized that there was this text out there, and we're sitting here today, we're arguing about obviousness, and FinSEP recognized that there was text out there, it was problematic, and it chose to replace it. FinSEP took, if you go back to the 1998 or 2001, I'm sorry, the filing of the Penn application, year one of Skill in the Art, FinSEP led you down that divergent path that said you should replace the descriptive text with the graphical summary information because they're unreliable. Are there any further questions? I'll reserve my time for rebuttal. Okay, fine. Thank you. Good morning, Your Honor, and may it please the court. As the court is aware, there's only one very narrow issue on this appeal, and that's whether substantial evidence supports the board's factual finding that there was no teaching away in the FinSEP reference. I think the court's questions have already gotten to the heart of the case. What's your response to your friend's argument that the fair reading of FinSEP is that it's talking about replacing text with the visual graphics, and that's sufficient under Dupuy for a teaching away conclusion? So, two answers to that. First of all, we're on substantial evidence review, and the board has already made a particular finding. In the Dupuy case, that was the finding of the district court that was upheld by this court on appeal. The Kuno reference told the world that the screw, using a rigid screw in the spinal implant, was prone to failure, and you wouldn't use a rigid screw, and that's exactly what the Dupuy patent did, is it used a rigid screw. So the first answer is substantial evidence. The board's already found that. Second of all, what you won't find in the FinSEP reference is any words like replace. You won't even find the words unreliable. That's attorney argument. That's the conclusion that my friend has drawn from the reference, and whether or not that could support a finding had the board made such a finding. Cases from this court, like Axo, make very clear that the fact that a reasonable person might have arrived at a different conclusion is not enough for substantial evidence review. Now, Judge Moore's comments to my friend with regard to the language of cursory, if not cryptic, really do sort of bring this to a head, and really do show a difference between Dupuy-Spine in this case. The technology issue here is about information. More information is better than less information. The language in FinSEP at column 10 is to make the internet searching experience better, much faster, much easier, even more advantageous. Those are actual quotes from column 10 of FinSEP. There's no risk of breaking off a screw in the body and having serious physical problems if you include the associated text. In fact, if you look at, we have an excerpt of the Hill reference, that's the Internet for Dummies reference. Yeah, but for teaching away, you don't have to prove that it kills someone. Well, no, no, of course that's correct. If there's enough disparagement, if they say, this is cursory, this is unreliable, this is a far better way of doing it than this way, and disparage that, it's not that hard. But FinSEP never makes it an either or choice. FinSEP is talking about adding a textual window. And the case that's being made against us here is that there's silence in FinSEP about whether or not you could use the text. There's no teaching in FinSEP that says don't use the text. There's no teaching in FinSEP that says it's unreliable. You won't find that word and you won't find the equivalent of that word in FinSEP. And quite frankly, what my friend's position is on the other side is that we have to have an anticipating reference in order to have a teaching away. And that's of course not the law in obviousness, as this court's decisions in Allergan and Galderma and Syntex have made very clear. You don't really want to direct us to a publication entitled Internet for Dummies, do you? You know, actually, that is exactly… I didn't know that you want to read it yourself. That's exactly as simple as this is, Your Honor. There is no teaching away. But the point I was going to make about the Hill reference, and we have an excerpt from the Hill reference at page 31 of our brief. And there's a Lycos search that is set forth in the Hill reference that has to do with left back. That's the search term that was used in Lycos. And you'll see that in the first three entries on the Lycos search that's shown in Hill, it's clear at the very least, even from that cursory accompanying text, that the left bank search result has to do with a restaurant in California. Well, here's why that's a beneficial addition, and FinSEP doesn't teach away from that. If you know, for example, that you're looking for information about the left bank in Paris, then you won't bother mousing over the first three entries because they deal with a restaurant in California. If, on the other hand, you are looking for information about a restaurant in California, then you will mouse over that, and if you didn't have that associated text, then your Internet experience would be all the poorer for it. And that's exactly the opposite of what FinSEP teaches, which is making the Internet experience richer, faster, much faster, much easier, even more advantageous. Unless the court has further questions, I think I can rest on the argument in the briefs at this point. Thank you. Thank you. Thank you very much. Just to go back to the unreliability issue with FinSEP, you asked if FinSEP ever states that the text is unreliable, and while it doesn't say verbatim that the text is unreliable, the issue with having this text that's sometimes cryptic is that FinSEP didn't understand what text to replace or what not to replace. So FinSEP recognized this problem and took you down the path to replace all of the text with what FinSEP thought was the better, more advantageous graphic summaries. And just like in DePuy, where DePuy doesn't come out and say that these rigid members are unreliable verbatim, but if you could read DePuy in the context, and you look at FinSEP in this context, you would recognize that the summary text was unreliable. Furthermore, I'd like to point out that there was a question, or I'm sorry, with respect to whether we have any evidence of disparagement or criticism. The board, in its decision, pointed to Google's recognition that, and I quote from appendix 18, that Google points to passage of FinSEP describing the problem to be solved, namely the known search engine's return results in the form of a list of hyperlinks with cursory, if not cryptic, initial text presentation of those webpages. So the board recognized, Google recognized, that the text was a problem with respect to the search engines because of the unreliability. Now, the question we're presenting is whether FinSEP taught away, and we think that because there's no embodiments of FinSEP utilizing the descriptive text, it disparages the descriptive text, and you look at what it taught, and the fact that FinSEP had the descriptive text made available to them at the time of the invention, you recognize the text was there, just like in DePuy where the prior recognized that the bridging members were there, it took you down a different path than that, which Mr. Marcon took you down. Any further questions? Thank you. We thank both sides, and the case is submitted. That concludes our proceedings.